UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.C., <br>                 Plaintiff, <br> v. <br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br>                 Defendant. | Case No. 2:17-cv-08235-SHK <br><br> OPINION AND ORDER |

Plaintiff J.C.[1] ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying his application for disability insurance benefits ("DIB"), under Title II of the Social Security Act (the "Act"). This Court has jurisdiction, under 42 U.S.C. § 405(g), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

---

[1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with respect to Plaintiff's medical records discussed in this Opinion and Order.

## I. BACKGROUND

Plaintiff filed an application for DIB on June 3, 2013, alleging disability beginning on February 1, 2008. Transcript ("Tr.") 300-01.[2] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on September 21, 2016, ALJ John C. Tobin determined that Plaintiff was not disabled. Tr. 68-79. Plaintiff sought review of the ALJ's decision with the Appeals Council ("AC"), however, review was denied on October 2, 2017. Tr. 1-7. This appeal followed.

## II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196)); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing.") (citation omitted). A reviewing

---

[2] A certified copy of the Administrative Record was filed on April 9, 2018. Electronic Case Filing Number ("ECF No.") 14. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

2

court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

### III. DISCUSSION

#### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps

one through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

> Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [DIB]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).
>
> Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [DIB]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB]. See id.

Id. at 1098-99.

### B. Summary Of ALJ's Findings

The ALJ determined that "[Plaintiff] last met the insured status requirements of the . . . Act on December 31, 2011." Tr. 70. The ALJ then found at step one, that "[Plaintiff] did not engage in [SGA] during the period from his alleged onset date of February 1, 2008 through his date last insured of December 31, 2011 (20 CFR 404.1571 et seq.)." Id. At step two, the ALJ found that "[t]hrough the date last insured, [Plaintiff] had the following severe impairments: morbid obesity; bipolar disorder; and anxiety disorder (20 CFR 404.1520(c))." Id. At step three, the ALJ found that "[t]hrough the date last insured, [Plaintiff] did not have an impairment of combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526)." Tr. 71.

In preparation for step four, the ALJ found that through the date last insured, Plaintiff had the residual functional capacity ("RFC") to:

perform light work as defined in 20 CFR 404.1567(b) except that he was
limited to unskilled work requiring no prior experience and [that] could
be learned through observation; he was precluded from public contact;
he was limited to independent work with no team-oriented work, but he
could work in proximity to, but not in coordination with others; and he
was precluded from quota-driven work.

Tr. 73. The ALJ then found, at step four, that "[t]hrough the date last insured, [Plaintiff] was unable to perform any past relevant work (20 CFR 404.1565)." Tr. 77.

In preparation for step five, the ALJ noted that "[Plaintiff] was born on February 25, 1972 and was 39 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563)." Id. The ALJ observed that "[Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564)." Id. The ALJ then added that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 4004, Subpart P, Appendix 2)." Id.

At step five, the ALJ found that "[t]hrough the date last insured, considering [Plaintiff's] age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed (20 CFR 404.1569, 404.1569(a))." Id. Specifically, the ALJ found that Plaintiff could perform the "light, unskilled" occupations of "Cleaner," as defined in the dictionary of occupational titles ("DOT") at DOT 323.687-014, "Inspector, Dot 920.687-194," and "Packager, DOT 559.687-074." Tr. 78. The ALJ based his decision that Plaintiff could perform the aforementioned occupations "on the testimony of the [VE]" from the administrative hearing, after "determin[ing] that

6

the [VE's] testimony [wa]s consistent with the information contained in the [DOT]." Id.

After finding that "[Plaintiff] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy," the ALJ concluded that "[a] finding of not disabled is . . . appropriate under the framework of the above-cited rule." Id. (internal quotation marks omitted). The ALJ, therefore, found that "[Plaintiff] has not been under a disability, as defined in the . . . Act, at any time from February 1, 2008, the alleged onset date, through December 31, 2011, the date last insured (20 CFR 404.1520(g))." Id.

**C.   Issue Presented**

In this appeal, Plaintiff raises only one issue: whether the ALJ properly considered the opinion of his treating psychiatrist Alan D. Vu, M.D., from July 23, 2015. ECF No. 19, Joint Stipulation at 4.

**1.   Dr. Vu's 2015 Opinion**

Dr. Vu completed a mental RFC check-the-box assessment of Plaintiff in July 2015, in which Dr. Vu opined that Plaintiff had moderate to marked limitations in his understanding and memory, sustained concentration and persistence, social interaction, and adaptation. Tr. 1135-37. Specifically, Dr. Vu opined that Plaintiff was markedly limited in his ability to:

- remember locations and work-life procedures;
- understand and remember detailed instructions;
- carry out detailed instructions;
- maintain attention and concentration for extended periods;
- perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;
- work in coordination with or proximity to others without being distracted by them;

- complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and
- set realistic goals or make plans independently of others.

Tr. 1135, 1137.

Dr. Vu also opined that Plaintiff was moderately limited in his ability to:
- understand and remember very short and simple instructions;
- carry out very short and simple instructions;
- sustain an ordinary routine without special supervision;
- make simple work-related decisions;
- interact appropriately with the general public;
- accept instructions and respond appropriately to criticism from supervisors;
- maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness;
- respond appropriately to changes in the work setting; and
- travel in unfamiliar places or use public transportation.

Id.

Dr. Vu also opined that Plaintiff's "social and occupational functioning are significantly impaired. He has not worked in 8 years. Given his functional capacity, he is unable to seek gainful employment at this time." Tr. 1136. Dr. Vu supported his opinions of Plaintiff by noting the following observations. First, Dr. Vu noted that Plaintiff displayed "[d]iminished hygiene" and that Plaintiff was showering only two to three times per week. Tr. 1137. Second, Dr. Vu noted that Plaintiff "is socially isolating, only leaving the house 1-2 times per week [and] only to [go to] familiar places." Id. Third, Dr. Vu observed that Plaintiff was "oriented

8

to person, place, and time[,]" but that Plaintiff displayed "poor concentration and memory" and was able to recall only one of three objects after five minutes. Id. Dr. Vu noted, again, that Plaintiff had not worked in eight years. Id.

### 2. ALJ's Consideration Of Dr. Vu's Opinion

The ALJ gave "little weight" to Dr. Vu's 2015 opinion that Plaintiff had "moderate to marked limitations in the broad areas of mental functioning" because: (1) Dr. Vu "did not state that this assessment pertained to the relevant time period"; (2) Dr. Vu's opinion was "brief, conclusory, and inadequately supported by clinical findings"; and (3) Dr. Vu "did not provide an explanation for this assessment." Tr. 75-76 (citing Tr. 1135-37). The ALJ found, instead, that Dr. Vu "primarily summarized in the treatment notes [Plaintiff's] subjective complaints, diagnoses, and treatment, but failed to provide medically acceptable clinical findings to support the assessment." Tr. 76.

### 3. Plaintiff's Argument

Plaintiff argues that the ALJ erred by "fail[ing] to provide specific and legitimate reasons for giving l[ess] weight to Dr. Vu's opinion. ECF No. 19, Joint Stipulation at 4.

### 4. Defendant's Response

Defendant argues that "the ALJ was entitled was entitled to give Dr. Vu's functionality opinions little weight" because Dr. Vu: "did not purport to opine limitations pertaining to the period under the ALJ's consideration"; "did not provide any explanation for his assessments"; and "primarily summarized in his treatment notes Plaintiff's subjective complaints, diagnoses, and treatment, but failed to provide medically acceptable clinical findings to support his assessment." Id. at 16.

### D. Standard To Review ALJ's Analysis Of Dr. Vu's Opinion

There are three types of medical opinions in Social Security cases: those from treating physicians, examining physicians, and non-examining physicians.

Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." Id. (citing 20 C.F.R. § 404.1527(c)(2)–(6)).

"'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" Id. (quoting Ryan v. Comm'r Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir. 2008)). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'" Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

"'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" Trevizo, 871 F.3d at 675 (quoting Ryan, 528 F.3d at 1198). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" Garrison, 759 F.3d at 1012 (quoting Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007)). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

interpretation thereof, and making findings.'" Trevizo, 871 F.3d at 675 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

### E. ALJ's Decision Is Not Supported By Substantial Evidence

As an initial matter, the Court notes that the ALJ did not find that Dr. Vu's 2015 opinion was contradicted by another doctor's opinion. Accordingly, the Court examines whether the ALJ's three reasons for rejecting Dr. Vu's 2015 opinion were specific and legitimate and supported by substantial evidence. See Stout, 454 F.3d at 1054 (the Court cannot affirm the ALJ's decision on grounds not invoked by the Commissioner).

With respect to the ALJ's first reason for rejecting Dr. Vu's opinion—that it did not relate to the relevant time period—the record does not support this conclusion in light of new evidence Plaintiff submitted to the AC following the ALJ's decision. Tr. 1-11. Specifically, on January 23, 2017, Plaintiff submitted medical records from Dr. Vu, dated January 12, 2017, wherein Dr. Vu opined that "there [is] a degree of medical probability that the objective medical findings identified in [Dr. Vu's] medical treatment notes and explained in the 2015 letter and 2016 evaluation reaches back to [Plaintiff's] mental state before December 31, 2011." Tr. 8-11. Dr. Vu explained that Plaintiff "has been treated for severe anxiety and a mood disorder previous to 12/31/11" and that Dr. Vu "ha[d] record[s] of treatment since 3/25/09." Tr. 11.

"[W]hen a claimant submits evidence for the first time to the [AC], which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the commissioner's decision is supported by substantial evidence." Brewes v. Comm'r Soc. Sec. Admin., 682 F.3d 1157, 1159-60 (9th Cir. 2012).

Here, the ALJ gave little weight to Dr. Vu's 2015 opinion, in part, because it did not pertain to the relevant time period from February 1, 2008, the alleged onset

11

date, through December 31, 2011, the date last insured. Tr. 75. The evidence Plaintiff submitted to the AC, however, makes clear that Dr. Vu's 2015 opinion relates back to at least December 31, 2011. Tr. 11. Therefore, this evidence demonstrates that Dr. Vu's 2015 opinion pertains to the relevant time period. The AC made this evidence part of the record and, therefore, the Court must now consider it. Brewes, 682 F.3d at 1159-60. Because the new evidence supplied by Plaintiff, which the AC made part of the record, reveals that Dr. Vu's opinion pertains to the relevant time period, the Court finds that the ALJ's contrary conclusion is no longer supported by substantial evidence. Accordingly, the Court finds that the ALJ's first reason for rejecting Dr. Vu's 2015 opinion was not clear and convincing and, therefore, fails.

With respect to the ALJ's second reason for rejecting Dr. Vu's opinion—that it was brief, conclusory, and inadequately supported by clinical findings—the ALJ's conclusion ignores Dr. Vu's extensive longitudinal treatment of Plaintiff and the numerous records prepared by Dr. Vu that support his 2015 opinion. For example, on March 28, 2013, Dr. Vu wrote a letter summarizing his treatment of Plaintiff through that date, as well as Plaintiff's mental health treatment generally, and reported the following. Tr. 482. Dr. Vu first saw Plaintiff on March 25, 2009, for depression and severe anxiety, and prescribed Plaintiff with Prozac and Xanax, but noted that these prescriptions provided "limited success" in treating Plaintiff's symptoms. Id. Later in 2009, Plaintiff was prescribed Wellbutrin as an "augmenting agent," but Plaintiff experienced adverse side effects. Id. On April 9, 2012, after presenting with increased anxiety, Plaintiff's Prozac prescription was discontinued, and Lexapro was prescribed instead. Id. Later in 2012, Plaintiff was hospitalized, diagnosed with bipolar disorder, and prescribed Abilify, in addition to the Lexapro and Xanax Plaintiff was already taking, to treat his symptoms. Id. Plaintiff, however, experienced adverse side effects with Abilify and, therefore, began taking Lithium and Xanax only. Id. Plaintiff remained symptomatic on that

prescription combination and so he was prescribed and tried Neurontin, Seroquel, Zyprexa, Depakote, clonidine, and Lamictal, but Plaintiff, again, had adverse side effects on this prescription combination. Id. Plaintiff was then placed on Lithium and Xanax only, and was noted to need additional medication adjustments and follow-up appointments every one to three months thereafter. Id.

Dr. Vu also noted that Plaintiff had "difficulty dealing with stress" and suffered from "excessive worrying, mood instability, insomnia fatigue, anhedonia, social isolation, lack of motivation, poor concentration, and feeling overwhelmed." Id. Plaintiff was noted to be "independent in his basic ADL's," but to "rel[y] heavily on his wife for assistance in financial and decision-making matters." Id. Dr. Vu noted that Plaintiff's "prognosis is guarded and his condition is long-term, expected to exceed 12 months in duration." Id. Dr. Vu opined that "Plaintiff is disabled and unable to obtain gainful employment of any sort." Id.

On March 30, 2015, Dr. Vu, again, summarized his treatment of Plaintiff and Plaintiff's mental health treatment generally through that date. Tr. 1116-17. Dr. Vu noted that Plaintiff "was hospitalized on a 5150 hold" in December 2012 and January 2013, and that Plaintiff still struggled with "excessive worrying, mood instability, insomnia, fatigue, anhedonia, social isolation, lack of motivation, poor concentration, and feeling overwhelmed." Tr. 1116. Dr. Vu noted that Plaintiff still "ha[d] difficulty dealing with stress" and still struggled with his prescription medication. Id. Specifically, Dr. Vu chronicled the struggles and limited success Plaintiff had with taking various combinations of prescription medications, including fluoxetine, Xanax, Wellbutrin, Lexapro, Abilify, Lithium Carbonate, Neurontin, Seroquel, Zyprexa, Depakote, clonidine, Vistaril, Risperdal, Lamictal, and gabapentin, due to adverse side effects, and Dr. Vu noted that Plaintiff still required further adjustments of his medications and follow-up appointments every one to three months. Id. Dr. Vu noted that Plaintiff still "relie[d] heavily on his wife for assistance in financial and decision-making matters, which has put a strain

13

on their relationship" and led Plaintiff and his wife to consider divorce. Tr. 1116-17. Dr. Vu found, again, that Plaintiff's prognosis was "guarded" and Dr. Vu maintained that Plaintiff remained completely disabled. Tr. 1117.

Here, because the ALJ's conclusion that Dr. Vu's opinion was brief, conclusory, and inadequately supported by clinical findings, ignores Dr. Vu's extensive longitudinal treatment of Plaintiff and the numerous records prepared by Dr. Vu that support his 2015 opinion, the Court finds that the ALJ's second reason for rejecting Dr. Vu's opinion was neither clear and convincing, nor supported by substantial evidence. See Garrison, 759 F.3d at 1013 (9th Cir. 2014) (citation omitted) (the ALJ's "fail[ure] to recognize that the opinions expressed in [a] check-the-box form . . . [prepared by the plaintiff's treating doctor] were based on significant experience with [the plaintiff] and supported by numerous records . . . [and were] entitled to weight that an otherwise unsupported and unexplained check-box form would merit" constituted an "egregious and important error[]."); See also Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others). Accordingly, the Court disagrees with the ALJ's second reason for giving Dr. Vu's 2015 opinion less weight.

Finally, with respect to the ALJ's third reason for rejecting Dr. Vu's opinion—that Dr. Vu did not explain his assessment—this reasoning fails because it ignores the explanations Dr. Vu provided on the last page of his 2015 mental RFC assessment. Holohan, 246 F.3d at 1207-08. For example, Dr. Vu opined that Plaintiff had moderate limitations in his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Tr. 1137. Dr. Vu supported those conclusions by noting that Plaintiff displayed "[d]iminished hygiene" and that Plaintiff was showering only two to three times per week. Id. Additionally, Dr. Vu opined that Plaintiff was moderately limited in his ability to interact appropriately with the general public and to travel to

14

unfamiliar places.  Id.  Dr. Vu supported those conclusions by observing that Plaintiff "is socially isolating, only leaving the house 1-2 times per week" and that Plaintiff "only to [goes to] familiar places."  Id.  Finally, Dr. Vu opined that Plaintiff had moderate and marked limitations in his ability to remember locations and work-life procedures, understand and remember detailed instructions, maintain attention and concentration for extended periods, and understand and remember very short and simple instructions.  Tr. 1135, 1137.  Dr. Vu supported those conclusions by observing that Plaintiff had "poor concentration and memory[,]" as evidence by Plaintiff's ability to recall only one of three objects after five minutes.  Id.  Because Dr. Vu's opinions in the mental RFC were supported by the above evidence, the Court rejects the ALJ's third and final reason for giving less weight to Dr. Vu's opinions in the 2015 mental RFC assessment.

### IV.  CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).  See Garrison, 759 F.3d at 1009 (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing.") (citation and internal quotation marks omitted).  On remand, the ALJ shall consider and discuss the medical evidence, including Dr. Vu's opinions discussed herein.

IT IS SO ORDERED.

DATED: 9/20/2018

_____
HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge